**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| JOSHUA R. GROSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Cause No.: |
| NORFOLK SOUTHERN RAILWAY CO., | ) | |
| | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

NOW COMES Plaintiff, Joshua R. Grose, by and through his attorneys, Sweeney Law Firm, and for his Complaint against the Defendant, Norfolk Southern Railway Company, a corporation, states as follows:

**JURISDICTION AND VENUE**

1. This is an employment action based upon and arising under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq*.

2. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 29 U.S.C. § 1331, since these claims arise under federal statutory law.

3. Plaintiff timely filed administrative charges with the relevant agency which encompasses the wrongful acts alleged in this action, and has therefore exhausted his administrative remedies.

4. Venue is proper within this district because the unlawful practices complained of herein occurred within the Northern District Of Indiana, making venue in this District proper in accordance with 28 U.S.C. § 1391(b).

## THE PARTIES

5. Plaintiff, Joshua R. Grose, is a citizen of the United States and the State of Michigan, and at all times pertinent was a resident of Granger, Indiana, St. Joseph County, Indiana.

6. Defendant is a Virginia corporation with its principal place of business in the State of Virginia, registered to do business in the State of Indiana.

7. Defendant regularly and systematically conducts and transacts business associated with and in the Northern District of Indiana and is subject to the jurisdiction of this Court.

## GENERAL ALLEGATIONS

8. Defendant is a company with a large number of employees, in excess of that number required by the laws referenced in paragraph 1, *supra*.

9. Plaintiff began working for Defendant on or about January 31, 2011.

10. At all relevant times herein Plaintiff's employment with Defendant has been governed by a collective bargaining agreement.

11. The terms of the collective bargaining agreement require that Plaintiff bid for positions with Defendant, and that the positions for which Plaintiff bid are awarded to the employee with the most seniority.

12. At all relevant times herein Plaintiff was an "employee" of defendant within the meaning of the ADA.

13. At all relevant times herein Plaintiff worked for Defendant at its facility, or yard, located in Elkhart, Indiana.

14. Plaintiff's initial position with Defendant was conductor trainee.

15. Plaintiff was promoted to the position of conductor in or about June 2011.

16. On or about July 10, 2014, while working as a conductor Plaintiff injured his left wrist.

17. Plaintiff's July 10, 2014 left wrist injury was the result of an alleged work-related injury.

18. Defendant medically disqualified Plaintiff from returning to work as a conductor as a result of physical restrictions related to his July 10, 2014 left wrist injury.

19. On or about December 23, 2015, Plaintiff returned to work for Defendant as a Switch Tender; a position compatible with his physical restrictions.

20. On or about August 25, 2016, Plaintiff settled with Defendant regarding his July 10, 2014 left wrist injury.

21. In or about August 2016 Plaintiff began training to be qualified for the position of Yardmaster; another position compatible with his physical restrictions.

22. Plaintiff completed his Yardmaster training and became qualified to work as a Yardmaster in or about September 2016.

23. On or about September 12, 2017, Plaintiff was "bumped" from his Switch Tender position, meaning that he was replaced by an employee with more seniority.

24. Plaintiff was unable to successfully bid for another position for which he was qualified within 48 hours of being "bumped", so in accordance with the collective bargaining agreement, he was placed on the conductor's extra board ("extra board").

25. The extra board is a list of employees on call and available to work in the place of employees holding positions that are unavailable to work.

26. The collective bargaining agreement requires that employees on the extra board be qualified to work a particular set of jobs.

27. At all relevant times herein, Plaintiff has not been qualified to work all of the jobs required to be on the extra board.

28. At all relevant times herein, based on information and belief, Defendant has allowed similarly situated non-disabled employees that were not qualified to work all of the jobs required to be on the extra board, to be on the extra board.

29. Defendant's employees on the extra board receive guaranteed pay, regardless of whether they are called in to work.

30. The first pay period after Plaintiff's placement on the extra board was on or about September 15, 2017.

31. Defendant did not pay Plaintiff his guaranteed pay on or about September 15, 2017.

32. Defendant has refused to allow Plaintiff to be placed on the extra board on numerous occasions since September 12, 2017, while allowing other similarly situated non-disabled employees to work on the board.

33. On numerous occasions since September 12, 2017 Defendant has refused to pay Plaintiff the guarantee to which he was entitled for being placed on the extra board, while, based on information and belief, it paid the guarantee to other similarly situated non-disabled employees that were placed on the board.

34. In or about October 2017 Plaintiff asked one of his supervisors, then acting superintendent William Deshazor, if Mr. Deshazor would let Plaintiff know of any Yardmaster openings. Mr. Deshazor failed to respond to Plaintiff's inquiry, while based on information and belief, Defendant responded to requests of non-disabled similarly situated employees.

35. In the event Defendant is unable to replace a worker through the extra board, it utilizes the "Decision Call Table" to call a list of employees in order to find replacement workers. Procedure is to begin calling employees in the order they are listed on the Table.

36. On numerous occasions since September 12, 2017, despite the fact that Plaintiff's name was next to call on the "Decision Call Table" list, Defendant failed to call Plaintiff into work, while based on information and belief, Defendant called non-disabled similarly situated employees on the list.

37. In 2017 Defendant's medical staff cleared Plaintiff to work as a utility conductor.

38. In 2017 Plaintiff asked Mr. Deshazor to begin training in order to qualify as a utility conductor.

39. Mr. Deshazor failed to allow Plaintiff to train as a utility conductor, while based on information and belief, Defendant allowed other non-disabled similarly situated employees to undergo training to be qualified for other positions.

40. Defendant performs random drug and alcohol tests on its employees.

41. Since September 12, 2017 Plaintiff has been subjected to an unusually large number of "random" drug and alcohol tests, while other non-disabled similarly situated employees have not been subjected to as many "random" drug and alcohol tests.

42. At all pertinent times herein, the collective bargaining agreement required that if an employee was "bumped", unable to successfully bid on a position within 48 hours, and unable to be placed on the extra board, that the employee be furloughed.

43. On numerous occasions since September 12, 2017 Plaintiff met the qualifications to be furloughed but Defendant did not place him on furlough, while based on information and belief, Defendant placed other non-disabled similarly situated employees on furlough.

44. The actions taken by Defendant set forth more fully above have resulted in Plaintiff earning less than he could have had Defendant not taken the actions.

45. At all pertinent times herein, Plaintiff had a disability and/or impairment and/or Defendant regarded and/or perceived Plaintiff as having a disability and/or impairment substantially limiting one or more major life activities as defined in the ADA.

46. At all pertinent times herein Defendant had knowledge of Plaintiff's disability and/or impairment and regarded him as disabled and/or impaired.

47. Plaintiff is a member of a class of persons protected by the ADA.

48. The actions taken by Defendant set forth more fully above were undertaken on the basis of Plaintiff's disability and/or impairment and/or perceived and/or regarded disability and/or impairment substantially limiting one or more major life activities as defined in the ADA.

49. At all pertinent times herein, Plaintiff was a qualified employee as defined under the ADA, and was able to perform the essential functions of his job, with or without reasonable accommodation.

50. At all pertinent times herein, Plaintiff met Defendant's legitimate employment expectations.

51. As a result of Defendant's actions set forth more fully above, Plaintiff suffers from depression, anxiety, mental anguish, distress, and loss of enjoyment of life.

52. Other non-disabled employees similarly situated to Plaintiff have not been subjected to the Defendant's actions set forth more fully above.

53. Defendant is an employer within the meaning of the ADA and, as such, is barred from discriminating against employees on the basis of their disability and/or impairment and/or

perceived and/or regarded disability and/or impairment which substantially limits one or more major life activities.

54. On or about March 8, 2018, Plaintiff timely filed an administrative charge against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADA. A copy of the Charge is attached as Exhibit A.

55. The Charge was filed within 180 days of the discriminatory practices described in this Complaint.

56. On or about December 14, 2018 Plaintiff received a right-to-sue letter from the EEOC which was dated December 13, 2018. A copy of the right-to-sue letter is attached as Exhibit B.

57. This Complaint is filed within 90 days of Plaintiff's receipt of the right-to-sue letter issued by the EEOC.

## COUNT I
## DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

58. Plaintiff adopts and incorporates by reference the allegations contained in all previous paragraphs of this Complaint as though fully set forth herein.

59. At all pertinent times herein, Plaintiff had a disability and/or impairment and/or Defendant regarded and/or perceived Plaintiff as having an impairment and/or disability as defined under the ADA.

60 At all pertinent times herein Plaintiff, a qualified individual under the ADA, was qualified for the positions of Switch Tender, Utility Conductor, and Yardmaster because he was and is able to perform the essential functions of those jobs with or without reasonable accommodation.

61. As set forth above, Defendant unlawfully discriminated against Plaintiff on the basis of his disability and/or impairment and/or regarded and/or perceived disability and/or impairment which substantially limits one or more major life activities and intentionally engaged in unlawful employment practices in violation of the ADA, 42 U.S.C. §§ 12101 *et seq.*, by conduct including but not limited to the following:

   a. Denying Plaintiff the same employment opportunities as set forth more fully above which it allowed other similarly situated non-disabled employees; and/or

   b. Subjecting Plaintiff to an excessive amount of "random" drug and alcohol testing greater than that to which it subjected similarly situated non-disabled employees; and/or

   c. In failing to furlough Plaintiff when required while furloughing other non-disabled similarly situated employees; and/or

   d. In subjecting Plaintiff to disparate treatment on the basis of his disability and/or impairment and/or regarded and/or perceived disability and/or impairment which substantially limits one or more major life activities as defined in the ADA; and/or

   e. In treating Plaintiff differently than similarly situated employees that did not have any disabilities and/or impairments and/or that Defendant did not perceive and/or regard as having any disabilities and/or impairments;

   f. In regarding Plaintiff has having a disability and/or impairment and/or in regarding and/or perceiving Plaintiff as having a disability and/or impairment substantially limiting one or more major life activities; and/or

   g. Denying Plaintiff equal terms and conditions of employment set forth more fully above as those provided to similarly situated non-disabled employees.

62. As a direct and proximate cause of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses in earnings and has also suffered embarrassment, emotional distress, emotional anguish, anxiety, depression, humiliation, and loss of enjoyment of life.

63. Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff with an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights, justifying an award of exemplary damages.

WHEREFORE, Plaintiff prays that judgement be entered against Defendant and Plaintiff be awarded the following: (a) loss of income, including back pay; (b) interest in an amount authorized by law; (c) compensation for mental suffering, distress, anguish, and loss of enjoyment of life Plaintiff suffered as a result of Defendant's unlawful employment practices; (d) punitive and exemplary damages for Defendant's willful violation of the ADA; (e) Plaintiff's costs, including reasonable attorney's fees; and (g) such further and additional relief as the Court deems just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted this 5th day of March 2019,

"/s/" David L. Farnbauch
David L. Farnbauch (#11187-45)
SWEENEY LAW FIRM
8019-B Lima Road
Fort Wayne, IN 46818
(260) 420-3137
Email: dlf@sweeneylawfirm.com